**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| **CHRISTOPHER R. SHELTON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00042 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By:  James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY** ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff.  Nora R. Koch, Acting Regional Chief Counsel, Region III, Elizabeth Corritore, Regional Assistant Counsel, and Stephen M. Ball, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Christopher R. Shelton filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433 (West 2011).  Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

Shelton applied for benefits on May 20, 2008, alleging disability beginning August 21, 2007.  The claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on April 20, 2010, at which Shelton, represented by counsel, and a vocational expert testified.  The ALJ issued a decision finding Shelton was not disabled on April 29, 2010.  The Social Security Administration's Appeals Council denied Shelton's request for review and the ALJ's decision became the final decision of the Commissioner.  Shelton then filed a complaint before this court seeking judicial review of the ALJ's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

II

Shelton was 25 years old at the onset of his disability, making him a younger individual under the regulations.  20 C.F.R. § 404.1563(c) (2012).  He graduated from high school.  His past relevant work includes work as a coal miner, roof builder, photo counter clerk, short order cook, restaurant cook, groundskeeper, and user support analyst.  During the alleged period of disability, Shelton worked at Wal-mart.

Shelton injured his back at work in a coal mine in July 2007. On July 31, 2007, he presented to D. Kevin Blackwell, D.O., who performed a physical examination showing no abnormalities other than back tenderness. X rays of the lumbar spine showed mild anterior listhesis of L5 but no fracture. An August 16 MRI of the lumbar spine revealed mild degenerative disc disease at L4-5 with a posterior annular tear, and mild effacement of the ventral thecal sac without significant central canal stenosis. Dr. Blackwell recommended that Shelton get an opinion from J. Travis Burt, M.D., a neurosurgeon.

On September 12, 2007, Dr. Burt ordered a lumbar myelogram and a CT scan which showed minimal spondylosis and disc protrusion and L3-4 and L4-5 with some compromise of the S1 nerve root. The next month, Dr. Burt ordered a lumbar discography, discogram, and CT scan that showed disc protrusions at L4-5 centrally and to the right, a disc protrusion and herniation at L5-S1, and S1 impingement. On November 12, 2007, Dr. Burt performed a lumbar fusion and L5-S1 decompressive hemilaminotomy and foraminotomy for removal of a prominent disc fragment. Upon discharge from surgery, Shelton was noted to have done "remarkably well" and had "substantial improvements in regards to his radicular pain." (R. at 320.) He ambulated in the hall without difficulty. Post-surgery X rays showed stable appearance of the lumbar spine and at Shelton's follow-up with Dr. Burt on December 12, 2007, he was doing well. Dr. Burt noted

that Shelton had improved in his back and lower extremity complaints and although the pain was a bit persistent, Shelton had made a marked improvement. Dr. Burt enrolled Shelton in physical therapy, which Shelton began on December 14.

On January 2, 2008, Shelton followed-up with Dr. Burt who found that Shelton was progressing well in physical therapy. He enrolled Shelton in half-day work hardening. On January 16, 2008, Dr. Burt noted that Shelton still had some pain but appeared to be very functional in his work capacity. He stated that Shelton was "pain free and neurologically intact." (R. at 623.) Dr. Burt put Shelton on full day work-hardening.

In February, Dr. Burt noted that Shelton was doing "very well." (R. at 621.) On February 25, 2008, Shelton's primary care physician Michael W. Wheatley, M.D., noted that Shelton was "in limbo" because he was "unable to go back to full work because he is on work restrictions that his employer cannot employee [sic] him with and his neurosurgeon will not release him unrestricted." (R. at 558.) In the next sentence, Dr. Wheatley stated "With his DDD, I do not think he can return to work." *Id.* In the next paragraph, Dr. Wheatley stated "I really do not think he can return to work. He says everything at work that he would have to lift weighs 50 lbs or more so there is no work for him to return to." *Id.*

On March 24, 2008, Shelton underwent a functional capacity evaluation. It showed that Shelton was able to perform light-strength work, lifting and carrying loads up to 20 pounds. Based on this, Dr. Burt sent Shelton for additional physical therapy. On April 1, 2008, Shelton presented to Dr. Burt complaining that he was having difficulty squatting. Dr. Burt could not find any physiological reason for Shelton's difficulty squatting and recommended further therapy. On April 7 Dr. Burt referred Shelton to a half-day work hardening program, consisting of three sessions per week for a four week period. On April 10 Shelton complained to Dr. Burt that the sessions had increased his pain. Dr. Burt informed Shelton that this was normal and that the pain would decrease over time. Physical examination revealed some mild lumbar spine spasm and decreased range of motion with flexion and extension, negative straight leg raising, and an antalgic gait that favored the right lower extremity. However, Dr. Burt observed that when Shelton walked out to his car after this appointment, his gait had substantially improved.

On April 11 Shelton reported to the hospital complaining of back pain. An MRI of the lumbar spine showed post-surgical changes consistent with the previous procedures and no acute disc herniations, nerve root impingements, or critical stenosis.

Shelton returned to Dr. Burt's office on April 17 and complained that the work-hardening program was causing him increased discomfort. Dr. Burt advised

Shelton that his MRI showed no herniations, impingements, or stenosis and stated "I am unable to explain his lumbar and lower extremity discomfort based off of his MRI." (R. at 612.)  Although Dr. Burt encouraged him to continue, Shelton decided to stop the work-hardening sessions.  Dr. Burt placed Shelton at maximum medical improvement ("MMI") with permanent restrictions of no repetitive bending, squatting, or lifting greater than 20 pounds.  Dr. Burt again observed that Shelton's gait was much improved on his walk through the parking lot to his car after the appointment.

On July 1, 2008, Shelton returned to Dr. Burt's office for a follow-up. Shelton reported that he was feeling well and that the pain medication was helping. Shelton complained of stiffness in his back but Dr. Burt noted that the X rays looked normal and Shelton's neurological examination was normal.  In November, however, Shelton complained of increased leg and back pain and Dr. Burt ordered an EMG and nerve conduction studies.  In December, Dr. Burt found that the EMG and nerve conduction studies showed no acute changes and nothing that was radicular in nature.  Dr. Burt found these findings to be very mild and postoperative in nature.  A lumbar myelogram and post-myelogram CT showed stable configuration of Shelton's construct and showed no evidence of nerve root impingement.  Dr. Burt concluded that Shelton's postoperative studies and electrophysiologic studies looked "pristine." (R. at 605.)  Dr. Burt encouraged

Shelton to continue his activities and informed him that he remained released for light work. There is no evidence that Shelton was treated for back or leg pain from December 2008 through March 2010.

In August 2008, state agency physician Joseph Duckwall, M.D., assessed the medical record. Dr. Duckwall opined that Shelton could lift 20 pounds occasionally and 10 pounds frequently, and stand about 6 hours in an 8-hour day with certain limitations. In December 2008, another state agency physician, Robert McGuffin, M.D., assessed the record and concurred with Dr. Duckwall's opinion.

In December 2009, Ward Stevens, M.D., reviewed the record and concluded that Shelton's condition did not meet or medically equal any listed impairment. Dr. Stevens also concluded that Shelton remained capable of work at the light level of exertion with various limitations.

On March 8, 2010, Shelton returned to Dr. Wheatley complaining of depressive symptoms. This is the first complaint of psychological problems in the record. Dr. Wheatley prescribed Paxil.

On March 13, 2010, Shelton presented to Robert Spangler, Ph.D., for a psychological evaluation. Dr. Spangler found Shelton to be socially confident but depressed. Shelton understood directions, demonstrated good concentration, and was appropriately persistent. Shelton was alert and oriented x4, had adequate

recall of remote and recent events, and was pleasant.  Dr. Spangler diagnosed adjustment disorder with depressed mood, mild to moderate, and evaluated Shelton's global assessment of functioning ("GAF") score to be 60-65.[1]

Dr. Spangler completed a medical source statement in which he opined that Shelton had no ability to understand, remember, and carry out complex instructions, a fair ability to understand, remember, and carry out simple and detailed instructions, deal with work stress, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability, and a good ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, function independently, and maintain personal appearance.  Dr. Spangler concluded that Shelton had a good ability to maintain attention and concentration, although his pace was slow.  Dr. Spangler further found that Shelton would miss two days of work a month due to his impairments.

Shelton submitted additional evidence to the Appeals Council.  The only piece of this evidence that he argues undermines the ALJ's decision is the opinion of Thomas E. Roatsey, D.O.  Shelton presented to Dr. Roatsey complaining of back and leg pain.  On June 22, 2010, Dr. Roatsey completed a medical assessment of Shelton's ability to perform work-related activities and opined that Shelton

---

[1] Dr. Spangler's evaluation actually states that the GAF score is "60-55," but given the way that such ranges are usually written, it seems clear that this was a typo and the range is 60-65.  (R. at 670.)

could lift a maximum of 10 pounds, never engage in postural activities, had a limited ability to use his arms and legs for pushing, reaching, feeling, and handling, and needed to avoid all environmental factors. Dr. Roatsey opined that Shelton was not able to work.

At his administrative hearing, Shelton testified that he lives with his wife, prepares meals, does some outside work around the house, including mowing, and occasionally gets out to see family, friends, shopping or other things. He stated that the pain medication he was being given for his back helped. The ALJ posed the hypothetical of a person with Shelton's background with the physical limitations described in Dr. Stevens' assessment and the mental limitations described in Dr. Spangler's assessment, except for the limitation regarding absences from work. The vocational expert testified that significant jobs existed in the national economy that such an individual could perform.

In the decision, the ALJ found that Shelton had the severe impairments of lumbar degenerative disc disease, obesity, and adjustment disorder with depressed mood. The ALJ found that none of these impairments met or medically equaled a listed impairment. The ALJ found that Shelton retained the residual functional capacity ("RFC") to perform a limited range of light work with certain limitations, including the limitation that he must work in a low-stress position with simple or detailed (but not complex) job instructions.

Shelton argues that the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is

then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Shelton first argues that the ALJ misread Dr. Wheatley's statement that Shelton could not return to work by interpreting the statement to mean that Shelton was unable to return to his most recent work in the coal mine. Shelton argues that Dr. Wheatley's statement rather meant that Shelton could not perform any work and is totally disabled. Shelton's reading of Dr. Wheatley's statement is without

merit. In the context of Dr. Wheatley's notes, it is clear that he stated that Shelton could not return to work at the mine because the limitations then in place from Dr. Burt precluded the work that was available at the mine. There is simply no indication that Dr. Wheatley's statement was meant to imply that Shelton was unable to perform any work at all. Such a statement would not be supported by Dr. Burt's restrictions, to which Dr. Wheatley was clearly referring. Further, Dr. Burt was the primary treatment provider for Shelton's back impairment and his limitations are well-supported in the record. The ALJ correctly assessed Dr. Wheatley's statement and substantial evidence supports the ALJ's RFC determination of Shelton's physical capacity.

Shelton next argues that the ALJ erred in rejecting the portion of Dr. Spangler's opinion which stated that Shelton would be unable to work an average of 2 days per month. The ALJ stated that he gave Dr. Spangler's opinion some weight as it was generally consistent with the doctor's evaluation and assessment. However, the ALJ found that Dr. Spangler's conclusion that Shelton would be absent two days per month should be rejected because there was no basis for the limitation in Dr. Spangler's evaluation or the record. Dr. Spangler's assessment indicates that Shelton's mental impairment affected him only minimally to moderately. Dr. Spangler felt that Shelton would be good or fair in most aspects of mental work ability and presented no reasons that Shelton's impairment would

cause him to miss work two days per month. In addition, as the ALJ noted, Dr. Spangler accorded Shelton a GAF score of 60-65, indicating some mild symptoms but general good functioning. As the ALJ accords medical opinions weight based, in part, on their supportability in the record and consistency with the record as a whole, the ALJ was well within his discretion in declining to consider this aspect of Dr. Spangler's opinion. There is simply no evidence that Shelton's mental impairments were so serious as to cause him to miss work two days per month. The ALJ limited Shelton's RFC to unskilled, low-stress jobs with simple or detailed (but not complex) job instructions. This RFC is supported by the evidence of the record.

### IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 7, 2012

/s/ James P. Jones  
United States District Judge